**William George KNAUB, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 904.**

Supreme Court of Alaska.

July 10, 1968.

---

**46**

William George Knaub, pro se.

Russell J. Gallagher, Asst. Dist. Atty., Douglas B. Baily, Dist. Atty., Anchorage, for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

■ Appellant, now serving concurrent life sentences, appeals from the superior court's denial of post conviction relief. Treating the matter as an appeal from a denial of a Criminal Rule 35(b) motion, we are of the opinion that the trial court correctly determined the motion. The files and records in the case conclusively show that appellant is not entitled to relief.[1]

On July 29, 1964, a complaint was filed charging appellant with the first degree murder of Shirley L. Scott. On the same day the record shows that appellant signed a waiver of preliminary hearing and was bound over to the superior court. On July 30 appellant appeared before Superior Court Judge Edward V. Davis who appointed counsel and also informed appellant that if his court-appointed counsel so desired, the waiver of preliminary hearing would be set aside.

Subsequently, on August 10, 1964, an Anchorage superior court grand jury returned a two-count indictment charging appellant with the first degree killings of his wife, Bessie Knaub, and Shirley L. Scott. Four days later appellant, represented by counsel, was arraigned and entered not guilty pleas. At arraignment counsel for appellant requested a psychiatric examination of appellant and indicated to the court that he sought the services of Dr. Raymond Langdon. On August 19, 1964, Judge Davis signed an order appointing Dr. Langdon to examine appellant.[2]

There matters stood until October 15, 1964, at which time counsel for appellant filed an affidavit which stated in part that Dr. Langdon had been unable to accomplish the contemplated psychiatric examination, and that in counsel's opinion there was "need for a psychiatric evaluation of appellant." As a result of this affidavit Superior Court Judge Hubert A. Gilbert appointed Dr. William Rader, a psychiatrist, to make an examination and to make his findings and testimony available to both prosecution and defense counsel.

On November 19, 1964, new counsel, Frank Nosek, was appointed for appellant.[3] On December 10, 1964, a hearing was held to determine whether appellant was competent to stand trial. At this hearing Dr. William Rader testified that he

1. In superior court, appellant attacked the judgment and commitment by a pleading which was captioned in part "Petition for Writ of Habeas Corpus."

   Authority for our characterization of this appeal as one from a denial of a Crim.R. 35(b) motion is found in Rivett v. State, 395 P.2d 264 (Alaska 1964). See also Crim.R. 35(b) which provides in part:

   An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this subdivision, shall not be entertained if it appears that the applicant has failed to apply for re-

lief, by motion, to the court which sentenced him, or its successor, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

2. At the proceedings in open court, which were held on August 19, 1964, counsel for appellant informed Judge Davis that he was not completely satisfied and that he "may be back with an application for a different psychiatrist at some time."

3. Appellant's initial counsel, Eugene Williams, had to withdraw because of his appointment to the position of district judge.

had examined appellant on four different occasions and in his opinion appellant was able "to understand the charges and able to help in his defense." At the conclusion of the hearing Superior Court Judge Hubert A. Gilbert adjudged appellant competent to stand trial and trial was set to commence on December 15, 1964. Prior to trial appellant's counsel moved, pursuant to Criminal Rule 17(b), for the issuance of subpoenas at state expense to secure the testimony of Dr. Michael Beirne and Dr. William J. Rader. This motion was granted and the trial commenced on December 15, 1964.

During the empaneling of the jury, counsel for appellant informed the trial judge that appellant desired to change his plea and to enter pleas of guilty to the murder counts. Appellant was then sworn and questioned by both the judge and the prosecutor for the purpose of ascertaining whether appellant's guilty pleas were voluntary and made with an understanding of the nature of the charges against him. After completion of this inquiry the trial court permitted appellant to withdraw his prior not guilty pleas and to enter pleas of guilty to the two homicide charges.[4] At this time the court discharged the jury and ordered the Youth and Adult Authority of the State of Alaska to conduct a presentence investigation and to furnish the court and counsel with a presentence report.

Judge Gilbert then left the Third Judicial District. During Judge Gilbert's absence, Superior Court Judge Ralph E. Moody received information from an officer of the Youth and Adult Authority that appellant claimed he did not understand the nature of the crime of murder in the first degree at the time he entered guilty pleas to the first degree charges. At a hearing held on January 22, 1965, Judge Moody replayed the tape recording of the December 15, 1964, change-of-plea proceedings. Upon ascertaining that appellant claimed he was not represented "correctly," the court had appellant sworn for the purpose of determining what degree of homicide appellant had in fact committed.[5] After hearing detailed testimony going to the circumstances surrounding the dual slaying, Judge Moody referred the matter back to Judge Gilbert for decision. On February 19, 1965, Judge Gilbert, after alluding to the proceedings which were had before Judge Moody, denied appellant's motion to withdraw his pleas of guilty and also denied appellant's request that new court-appointed counsel be furnished him.[6] Appellant was then sentenced to concurrent life sentences.

No direct appeal was thereafter taken by appellant. Approximately two and one-half years after sentence had been imposed, appellant filed in the superior court a pleading which was captioned in part "Petition for Writ of Habeas Corpus." On July 26, 1967, Judge Gilbert denied appellant's petition without conducting a hearing.[7] On August 10, 1967, Judge Gilbert also denied without hearing a supplement to the original petition for writ of habeas corpus. The superior court's denials have been appealed by appellant.[8]

---

4. See Oughton v. State, 420 P.2d 452, 454–455 (Alaska 1966).

5. This procedure was adopted by the trial court over what can be construed as an objection on the part of appellant's counsel.

6. Crim.R. 32(d) provides in part:
   A motion to withdraw a plea of guilty or of nolo contendre may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court, after sentence, may set aside the judgment of conviction and permit the defendant to withdraw his plea.

7. In ruling, the court said:
   Well, I'm familiar with the case. I've studied the files and the allegations of petitioner, which has been presented and I do not * * * find sufficient merit in them * * * for the granting of the petition. The Petition of Writ of Habeas Corpus is, therefore, denied * * *.

8. In regard to this appeal the record reflects that appellant has refused the assistance of court-appointed counsel.

In this appeal appellant's primary contentions are that his pleas of guilty were not entered voluntarily and with understanding of the nature of the charges against him;[9] that Judge Gilbert lacked jurisdiction to rule upon appellant's motion to withdraw his pleas of guilty and was without jurisdiction to impose sentence; and that appellant was denied a fair and impartial mental competency hearing.

In regard to appellant's assertion that Judge Gilbert did not possess jurisdiction to decide the motion to withdraw the pleas of guilty and further lacked jurisdiction to pass sentence, we believe that the provisions of Criminal Rule 25(a) are controlling here. This subsection of Criminal Rule 25 provides:

> Where a judge of the superior court is disqualified or for any other reason is unable to sit in the trial or hearing of any pending matter, the presiding judge or the chief justice of the supreme court shall designate another judge of the judicial district in which the matter is pending or a judge temporarily assigned thereto, to hear the matter.

■ As we have detailed previously, the record demonstrates that Judge Gilbert presided over the mental competency hearing and had adjudged appellant competent to stand trial. Further, Judge Gilbert was assigned to preside over appellant's trial and during the course of the trial accepted appellant's changes of plea. It is significant that while Judge Gilbert was absent from his judicial district, and as a result of the Youth and Adult Authority's presentence investigation of appellant, it came to the attention of presiding Superior Court Judge Ralph Moody that there was some question as to whether appellant understood the nature of the charges against him at the time he pled guilty. Under the circumstances of Judge Gilbert's absence from the judicial district, Judge Moody had "jurisdiction" to hear appellant's motion to withdraw his guilty pleas.[10]

■ We further hold that Judge Gilbert possessed authority to determine appellant's motion to withdraw his pleas of guilty after the matter had been referred back to him by Judge Moody.[11] As a matter of logic and procedural experience, it is apparent on the facts of this record that it was preferable to have Judge Gilbert pass upon appellant's motion to withdraw his pleas of guilty. We further hold that findings of fact and conclusions of law are not required to be filed by the judge in determining Criminal Rule 32(d) motions for withdrawals of pleas of guilty.[12] This conclusion disposes of appellant's contention that Judge Gilbert lacked jurisdiction

9. Crim.R. 11 provides in part:
   The court may refuse to accept a plea of guilty, and shall not accept such plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.

10. In addition to the text of Crim.R. 25(a) which we have previously set out, subsection (c) of rule 25 reads in part:
   If by reason of absence from the district * * * or other disabilty, the judge before whom the action has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

11. Judge Moody did not make of record his reasons for referring the matter back to Judge Gilbert.

12. In Smith v. United States, 213 F.2d 730, 731 (6th Cir. 1954), the court said:
   Appellant's contention that the District Court in denying the motion was obligated to make findings of fact and conclusions of law is without merit. The motion was addressed to the trial court's discretion. Smith v. United States, 6 Cir., 1950, 180 F.2d 851; Katz v. United States, 6 Cir., 1947, 161 F.2d 869, certiorari denied, 332 U.S. 846, 68 S.Ct. 350, 92 L.Ed. 417. Even if this appeal should be treated as one from appellant's prior motion to vacate and set aside the sentence under 28 U.S.C.A., § 2255, findings of fact and conclusions of law would not be required, where the files and records of the case conclusively showed that the

to sentence him because of Judge Gilbert's failure to file findings of fact and conclusions of law in ruling upon appellant's Criminal Rule 32(d) motion. We, therefore hold that Judge Gilbert had the authority to decide the Criminal Rule 32(d) motion to withdraw and subsequently to impose sentence upon appellant.

In regard to appellant's assertion that he was denied a fair and impartial competency hearing, it appears that his arguments center on the fact that Dr. William Rader testified at the hearing instead of Dr. Raymond Langdon. It is true that at the time of his arraignment appellant's counsel requested that a psychiatric examination be made of appellant by Dr. Raymond Langdon and that on August 19, 1964, Judge Davis did appoint Dr. Langdon to conduct such an examination. But as we previously pointed out, even at this early stage appellant's counsel indicated that in the future he might request the court to appoint another psychiatrist.[13] The record also shows that on October 15, 1964, appellant's counsel notified the court that despite the fact that Dr. Langdon had been unable to examine appellant there still was a need for a psychiatric examination. As a result Dr. William Rader was appointed to examine appellant and, as we have already pointed out, Dr. Rader testified at the competency hearing. In view of our study of the record, we have concluded that appellant's allegations of improprieties regarding the competency hearing are totally lacking in merit. At no place in the record does it appear that the prosecution suppressed the superior court's order of August 19, 1964, appointing Dr. Langdon. On the contrary, appellant's counsel requested that a psychiatric examination be had of appellant despite the fact that Dr. Langdon was unable to complete such an evaluation. At the competency hearing itself, neither appellant nor his attorney objected to the qualifications or testimony of Dr. Rader. Furthermore, appellant did not dispute Dr. Rader's testimony that he had examined appellant on four different occasions. The record of the competency hearing is also barren of any objection on appellant's part concerning the failure of Dr. Langdon to testify. Similarly, the record discloses that no efforts were made by appellant or his counsel to subpoena Dr. Langdon to testify at the competency hearing.[14] We, therefore, conclude the trial court correctly held that the files and record conclusively demonstrated appellant was not entitled to relief on the basis of his assertions regarding the competency hearing.

Appellant's last major contention is that he did not plead guilty voluntarily and with an understanding of the nature of the charges against him. Our study has led us to the conclusion that the trial court properly determined that the records and files conclusively disclosed that there was no basis to this contention. Review of the December 15, 1964, change-of-plea proceedings refutes appellant's argument here. What the record does reveal is that both the trial judge and the prosecuting attorney went to considerable lengths to insure that the contemplated changes of pleas on appellant's part were in fact voluntarily made with an understanding of the nature of the charges against him. In short, there was strict compliance with the mandate of Criminal Rule 11. Other than appellant's bare

appellant was entitled to no relief. Morales v. United States, 1 Cir., 1951, 187 F.2d 518; United States v. Fleenor, 7 Cir., 1949, 177 F.2d 482. Compare Howard v. United States, 6 Cir., 1951, 186 F.2d 778; Michener v. United States, 8 Cir., 1949, 177 F.2d 422. Our Crim.R. 35(b) is substantially similar to 28 U.S.C.A. § 2255.

See Papalia v. United States, 333 F.2d 620 (2d Cir.), cert. denied, 379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964).

13. Supra n. 2.

14. Four days after completion of the competency hearing and in contemplation of trial, appellant's counsel moved for the issuance of subpoenas at state expense to secure the testimony of Dr. Michael F. Beirne and Dr. William J. Rader. On December 15, 1964, Judge Gilbert granted the motions.

assertion that his attorney was incompetent, there is nothing in the record to indicate that appellant's counsel did not properly represent him at the change-of-plea proceedings.[15]

We, therefore, conclude that the trial court did not commit error in denying appellant's Criminal Rule 35(b) motion attacking the sentence which had been imposed. Criminal Rule 35(b) in part provides that:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the State District Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.[16]

If the lower court could determine conclusively that petitioner was entitled to no relief after an examination of the files and records of the case, then it acted properly in denying the petition without hearing.[17] The sole question before an appellate tribunal when confronted with an order denying, without hearing, a Criminal Rule 35(b) motion is whether the prisoner in his application for relief made such a showing as to require a hearing before the lower court.[18] In the case at bar we are of the opinion the superior court could have determined that the record and files conclusively demonstrated that appellant was entitled to no relief.[19]

We deem it necessary to refer to one additional point in this appeal. Appellant argues he was deprived of due process of law by virtue of the trial court's refusal to permit him to withdraw his pleas of guilty. It has been established that Criminal Rule 32(d) motions for withdrawals of guilty pleas are addressed to the sound discretion of the court and upon direct review will be set aside only for abuse of discretion.[20] We have previously mentioned the

---

15. Compare Anderson v. State, 438 P.2d 228, 230–231 (Alaska 1968), where this court adopted the mockery-farce-denial of a fair trial criterion in resolving claims of incompetency of counsel.

   The right to court-appointed counsel does not include the right to select a particular attorney. United States v. Davis, 365 F.2d 251, 254 (6th Cir. 1966); United States v. Burkeen, 355 F.2d 241, 245 (6th Cir.), cert. denied, Matlock v. United States, 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553, rehearing denied, 385 U.S. 893, 87 S.Ct. 28, 17 L.Ed.2d 127 (1966). Such a motion is addressed to the sound discretion of the court and the movant must demonstrate reasons for the requested change. Brown v. United States, 105 U.S.App.D.C. 77, 264 F.2d 363, cert. denied, 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959).

16. Crim.R. 35(b) also provides that:
   An appeal may be taken to the supreme court from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

17. Stout v. United States, 383 F.2d 448, 449 (5th Cir. 1967); Steele v. United States, 362 F.2d 536, 537 (10th Cir. 1966); Burgess v. United States, 319 F. 2d 345, 347 (9th Cir. 1963); Smith v. United States, 296 F.2d 220 (6th Cir.

1961), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 279 (1962); Adams v. United States, 95 U.S.App.D.C. 354, 222 F.2d 45, 48 (1955).

18. Kyle v. United States, 263 F.2d 657, 661 (9th Cir. 1959); Chandler v. United States, 222 F.2d 377 (10th Cir. 1955); United States v. Rutkin, 212 F.2d 641, 644 (3d Cir. 1954).
   In regard to the duty of the lower court in passing upon Crim.R. 35(b) motions, the court in Steele v. United States, 362 F.2d 536, 537 (10th Cir. 1966), said:
   An applicant for relief under § 2255 '* * * ought not be held to the niceties of lawyers' pleadings or be cursorily dismissed because his claim seems unlikely to prove meritorious.'
   See Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

19. In acting upon the motion Judge Gilbert was entitled to rely upon his recollection of the change of plea and competency hearings, including his impressions of appellant's competency, volition and understanding. Reed v. United States, 391 F.2d 4, 5–6 (9th Cir. 1968).

20. Zaffarano v. United States, 330 F.2d 114, 115 (9th Cir.), cert. denied, 379 U.S. 825, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964); Smith v. United States, 116 U.S. App.D.C. 404, 324 F.2d 436, 440 (1963),

care which court and prosecutor employed in ascertaining whether appellant had in fact pleaded guilty voluntarily and with understanding of the charges against him. At the time he heard appellant's motion to withdraw the guilty pleas, Judge Gilbert also had the benefit of the record of the proceedings held before Judge Moody. This record disclosed the existence of a factual basis for the entry of the guilty pleas as to both counts of first degree murder.[21]   Additionally, the proceedings before Judge Gilbert and Judge Moody do not demonstrate that appellant lacked understanding as to the nature of the charges or that his guilty pleas were other than voluntarily made. We, therefore, hold that appellant was not denied due process by virtue of the trial court's denial of his Criminal Rule 32(d) motion.

The superior court's denial without hearing of appellant's Criminal Rule 35(b) motion is affirmed.

cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964).

For a discussion comparing the relief available under Crim.R. 35(b) and Crim. R. 32(d), see 8 R. Cipes, Moore's Federal Practice ¶ 32.07 [4] (2d ed. 1968).

21.  On February 28, 1966, Rule 11 of the Fed.R.Crim.Proc. was amended in part by the additional of the following sentence:   "The Court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."   The following comment on the change appears in the Notes of the Advisory Committee on the Rules:

The court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.