C. Carey MATTHEWS,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 76–4244.

United States Court of Appeals,
Fifth Circuit.

March 20, 1978.

Rehearing Denied May 11, 1978.

Leo Greenfield, North Miami, Fla., for petitioner-appellant.

Jack V. Eskenazi, U. S. Atty., Vincent K. Antle, Lloyd G. Bates, Jr., Asst. U. S. Attys., Miami, Fla., for respondent-appellee.

Before JONES, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

This case initially came to this Court for determination of whether C. Carey Matthews was entitled to an evidentiary hearing on his § 2255 claim that threats or coercion induced his guilty plea. Holding that an evidentiary hearing was required, we remanded the case to the district court. *Matthews v. United States*, 533 F.2d 900 (5th Cir. 1976). This present appeal questions the district judge's finding, on re-

mand, that no threat had been made. We affirm.

Matthews, a former member of the Florida legislature and former practicing attorney, charged with securities, mail and wire fraud, pleaded guilty to one count of a nineteen count indictment, at the same time asserting his innocence, a procedure specifically authorized by the Supreme Court's decision in *Alford v. North Carolina*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In return, the Government agreed to dismiss the other counts of the indictment and recommend five years probation, which Matthews received.

Matthews later brought the instant motion to vacate under 28 U.S.C.A. § 2255, claiming his guilty plea had been coerced. He alleged the prosecutor had told his counsel that the trial judge said he would sentence Matthews to at least ten years imprisonment if Matthews went to trial and was found guilty. Matthews alleged that it was only after this threat that he decided to plead guilty.

We held that an evidentiary hearing was required to determine the truth of Matthews' assertions, because of conflicting affidavits of Sonnett, the prosecutor; Block and Mandina, Matthews' attorneys; and Matthews. At the evidentiary hearing, a district judge other than the trial judge who took the plea received testimony from these affiants.

The former prosecutor, Neal Sonnett, testified that at Block's request he had gone to see the trial judge to determine whether or not the judge would accept an *Alford* plea. This short discussion with the judge was limited to that question. When the judge indicated he would accept the *Alford* plea, Sonnett reported that fact to Block, who had waited outside the judge's chambers. Sonnett denied that he had conveyed to Block any opinion about what the judge would do if the case went to trial. Sonnett did testify, "out of a sense of fairness to Mr. Block," that he could "understand the circumstances under which Mr. Block might have gotten this impression [that Sonnett knew something about what the judge in-

tended]." But he immediately followed this by again categorically denying that he had ever indicated to Block the things that Matthews alleged.

Irwin Block, Matthews' former defense attorney, was the second witness. He testified that what he had said in his affidavit was true, "as far as it goes," but that it needed "elaboration" and Matthews' present counsel had "read something into it that is not contained there [since] nowhere [in his affidavit] was there any indication of any threats." Block said that during negotiations prior to trial, he and Sonnett had discussed what would happen if Matthews was convicted: Block thought Matthews would get either probation or a short prison sentence, and Sonnett thought that Matthews would get a long prison sentence. When Sonnett talked to him after leaving the judge's chambers, Block testified that "Somehow or other, I got the impression that there was some indication, no threats, no statements, but some indication from whatever was said, that the judge felt about this case the way that Neal [Sonnett] had indicated to me," *i. e.*, that if convicted Matthews might get a long term of imprisonment. Block characterized the impressions he had gotten from Sonnett as mere "lawyer talk." He "at no time took it as a threat and [he] at no time conveyed it as a threat." Block said he had told Matthews that he was not even sure whether the judge had said anything, but he felt obliged to convey it to him.

Philip Mandina, Matthews' former law partner, was the next witness. He testified that he was with Matthews when Block called, and that he had participated in Block's call. He summarized the call by testifying that Block said specifically that he had a discussion with Sonnett and Sonnett had talked to the judge, who had indicated to him that if Matthews was found guilty on any one count he would give him at least ten years in jail. Mandina testified that he thought the call was "threatening in nature," but, significantly, he also said that Block had told Matthews that he did not think the judge had made the state-

ment. Mandina said that he had not believed that the judge had made the statement either. He and Matthews discussed the situation, and Matthews decided that he could not take the chance, so he decided to plead guilty.

Matthews then testified in his own behalf. He said that he had been prepared to go to trial until he had received the call from Block. According to Matthews, Block said the judge had "threatened" a ten-year sentence, and this had not been an impression on Block's part but unequivocally what Sonnett had told him the judge had said. Matthews testified that while Block had told him Sonnett was politically ambitious and might be lying, Matthews believed the threat, because he could not afford to take a chance of not believing it and receiving ten years imprisonment. He also explained that he had not mentioned the threat when questioned by the trial judge during the Rule 11 guilty plea hearing, at sentencing or when he had previously petitioned to terminate probation, because he believed the judge was "hostile" and would refuse to accept the plea and possibly give him an even harsher sentence if he spoke up. Matthews said he had finally brought the § 2255 petition because he had become convinced by a newspaper article suggesting that Sonnett wanted a conviction in his case for political reasons, and by the judge's fair and compassionate attitude at the probation termination hearing, that the judge had not made the threat which Sonnett had conveyed to Block.

After hearing all of this testimony, the district judge found "that although the attorney for the Government may have speculated to plaintiff's attorney that his client would receive a lengthy sentence if convicted, there was no threat conveyed." He denied relief.

■ In a § 2255 case, the district court's findings of fact are to be upheld unless they are clearly erroneous. *United States v. Strother*, 458 F.2d 424 (5th Cir.), *cert. denied*, 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972).

■ Matthews places great reliance on the contents of Block's and Mandina's affidavits instead of the testimony at the evidentiary hearing. We remanded this case for an evidentiary hearing precisely because the affidavits were contradictory. At that hearing, Mandina testified substantially in accordance with his affidavit, but added that neither he nor Block viewed Sonnett's statement as a threat by the judge. Block stated that his affidavit was correct as far as it went, but that it needed elaboration, and that he had viewed Sonnett's remark not as a threat but just as "lawyer talk." Sonnett continued to categorically deny that he had ever passed along a threat. Based on a careful review of the transcript of this testimony at the evidentiary hearing, the district court's finding is not clearly erroneous.

■ Matthews contends that the district court erred in refusing to consider his subjective belief that a threat had been made. The law of this Circuit, however, holds that the defendant's subjective belief alone is not sufficient to invalidate a guilty plea. *See, e. g., United States v. McIntosh*, 566 F.2d 949, 951 (5th Cir. 1978); *United States v. Maggio*, 514 F.2d 80, 88 (5th Cir.), *cert. denied*, 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 405 (1975); *United States v. Battle*, 467 F.2d 569 (5th Cir. 1972).

The First Circuit's recent decision in *McAleney v. United States*, 539 F.2d 282 (1st Cir. 1976), cited by appellant, is not to the contrary. In *McAleney*, the prosecutor ventured his personal estimate that McAleney might receive three to five years in prison. At the evidentiary hearing, the trial court found that McAleney's counsel translated the prosecutor's opinion into a Government promise to recommend such a sentence. The First Circuit held that McAleney was entitled to rely on his counsel's erroneous representation of such an agreement. But the court also noted that without his counsel's erroneous transmission of the alleged Government promise, McAleney's subjective belief would be immaterial. 539 F.2d at 284.

If Block had transmitted a Government threat to Matthews, then *McAleney* would be relevant. We need not decide here whether we would adopt the First Circuit's position where a defendant's own attorney transmits a non-existent Government promise to his client, for we are not now faced with such a situation. The clear implication from the district court's finding is that Sonnett did not convey a threat to Block, nor did Block transmit such a threat to Matthews. Since no threat was transmitted to Matthews by the Government or by his own counsel, his subjective belief is not material. *McAleney, supra; Maggio, supra.*

■ Finally, Matthews contends we must again remand the case because the district court did not sufficiently set forth findings of fact and conclusions of law as required by § 2255. Although they might have been helpful, Matthews has not been prejudiced by the absence of more detailed findings. *See Papalia v. United States,* 333 F.2d 620 (2d Cir.), *cert. denied,* 379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964).

AFFIRMED.